**[ORAL ARGUMENT NOT YET SCHEDULED]**

**Nos.  11-1219, 11-1222**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————

**SPIRIT AIRLINES, INC., et al.,**
**Petitioners,**

**SOUTHWEST AIRLINES CO.,**
**Intervenor,**

**v.**

**U.S. DEPARTMENT OF TRANSPORTATION,**
**Respondent.**

———————

**ON PETITION FOR REVIEW FROM FINAL RULES OF THE
U.S. DEPARTMENT OF TRANSPORTATION**

———————

**BRIEF FOR RESPONDENT**

———————

Of Counsel:

**ROBERT S. RIVKIN**
 <u>General Counsel</u>

**PAUL M. GEIER**
 <u>Assistant General Counsel for Litigation</u>

**TIMOTHY H. GOODMAN**
 <u>Senior Trial Attorney</u>

**SAMUEL PODBERESKY**
 <u>Assistant General Counsel for Aviation
  Enforcement and Proceedings</u>

**BLANE WORKIE**
 <u>Deputy Assistant General Counsel
  for Aviation Enforcement and
  Proceedings
  U.S. Department of Transportation</u>

**TONY WEST**
 **Assistant Attorney General**

**MICHAEL S. RAAB**
 **(202) 514-4053**
**DANIEL TENNY**
 **(202) 514-1838**
 <u>Attorneys, Appellate Staff</u>
 <u>Civil Division, Room 7215</u>
 <u>Department of Justice</u>
 <u>950 Pennsylvania Avenue, NW</u>
 <u>Washington, D.C. 20530</u>

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**(A)  Parties and Amici.**

All parties, intervenors, and amici appearing in this Court are listed in the Brief for Petitioners.

**(B)  Rulings Under Review.**

The final rule under review is cited in the Brief for Petitioners.

**(C)  Related Cases.**

This matter has not previously been before this Court or any other court. Counsel for respondent are unaware of any related cases pending in this Court or any other court.

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT. ........................................................ 1

STATEMENT OF THE ISSUES PRESENTED. ..................................... 2

STATUTES AND REGULATIONS. ...................................................... 2

STATEMENT. ...................................................................................... 3

    A.    Statutory and Regulatory Background. ..................................... 3

    B.    The Challenged Regulations. ................................................... 4

        1.    Full-Fare Advertising. ................................................. 4

        2.    Refund Policies in Customer-Service Plans. ............................ 8

        3.    Post-Purchase Price Increases.. ................................... 9

    C.    Prior Proceedings. ................................................................. 10

SUMMARY OF ARGUMENT. ........................................................... 11

STANDARD OF REVIEW. ................................................................ 14

ARGUMENT. ..................................................................................... 14

    I.    The full-fare advertising rule is a reasonable exercise of the
agency's authority and consistent with the First
Amendment.. ........................................................................ 14

        A.    The rule is a reasonable exercise of the agency's
authority that is amply supported by the record. ...................... 14

        B.    The Department reasonably refused to allow
prominent statements of taxes and fees. ................................... 27

C.    The agency amply explained its modest departure
from prior policy........................................................... 29

D.    The rule is consistent with the First Amendment. ................... 37

1.    The rule readily satisfies the standards
applicable to commercial speech and
disclosures. .................................................. 37

2.    The rule does not affect political speech. ...................... 41

II.    The agency reasonably required that customer-service
plans provide for refunds within 24 hours.......................... 46

III.    The post-purchase price increase rule is reasonable and has
limited practical effect. ....................................... 51

CONCLUSION.................................................................. 55

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(7)

CERTIFICATE OF SERVICE

ADDENDUM – AIRLINE WEB SITES

STATUTORY ADDENDUM

## TABLE OF AUTHORITIES

**Cases:** **Page**

*Alaska v. Dep't of Transp.*,
  868 F.2d 441 (D.C. Cir. 1989)............................................................ 5

*Am. Airlines v. N. Am. Airlines*,
  351 U.S. 79 (1956)..................................................................... 16, 17

*Bd. of Trs. of State Univ. of N.Y. v. Fox*,
  492 U.S. 469 (1989).......................................................................... 41

*BellSouth Telecommunications, Inc. v. Farris*,
  542 F.3d 499 (6th Cir. 2008)...................................................... 44, 45

*Bolger v. Youngs Dairy Products Corp.*,
  463 U.S. 60 (1983)....................................................................... 42, 43

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
  447 U.S. 557 (1980)..................................................................... 40, 43

*Chevron U.S.A., Inc. v. Natural Resources Defense Council*,
  467 U.S. 837 (1984).......................................................................... 14

*Consolidated Edison Co. v. Public Service Commission of New York*,
  447 U.S. 530 (1980).......................................................................... 45

* *FCC v. Fox Television Stations, Inc.*,
  129 S. Ct. 1800 (2009)..................................................... 29, 30, 32

*Friedman v. Rogers*,
  440 U.S. 1 (1979)............................................................................. 40

*Milavetz, Gallop & Milavetz, P.A. v. United States*,
  130 S. Ct. 1324 (2010)............................................................... 37, 38

\* Authorities upon which we chiefly rely are marked with an asterisk.

-iii-

*Morales v. Trans World Airlines*,
504 U.S. 374 (1992)................................................................. 3, 26

* *Nader v. Allegheny Airlines, Inc.*,
426 U.S. 290 (1976)................................................................. 16, 22

*Nat'l Mining Ass'n v. Mine Safety and Health Admin.*,
512 F.3d 696 (D.C. Cir. 2008)................................................. 52

*National Fuel Gas Supply Corp. v. FERC*,
468 F.3d 831 (D.C. Cir. 2006)................................................. 24

*Riley v. National Federation of the Blind*,
487 U.S. 781 (1988)................................................................. 45

*Sabre, Inc. v. Dep't of Transp.*,
429 F.3d 1113 (D.C. Cir. 2005)............................................... 3

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943)................................................................... 24

* *United Air Lines v. Civil Aeronautics Board*,
766 F.2d 1107 (7th Cir. 1985).................................................. 17, 18

*Va. Pharm. Bd. v. Va. Citizens Consumer Council, Inc.*,
425 U.S. 748 (1976)................................................................. 42

* *Zauderer v. Office of Disciplinary Counsel*,
471 U.S. 626 (1985)................................................................. 37, 38

**Statutes:**

5 U.S.C. § 706(2)(A). ............................................................... 14

11 U.S.C. § 528(a)(4)................................................................ 38

\* Authorities upon which we chiefly rely are marked with an asterisk.

-iv-

15 U.S.C. § 45.................................................................... 17

15 U.S.C. § 45(a)(2)........................................................... 3, 26

26 U.S.C. § 7275................................................................ 5, 38

49 U.S.C. § 40113.............................................................. 14

49 U.S.C. 40113(a).............................................................. 3

* 49 U.S.C. § 41712.............................................. 2, 3, 16, 18

49 U.S.C. § 41712(a)........................................................... 3, 14

49 U.S.C. § 41713............................................................... 3, 26

49 U.S.C. § 46110(a)............................................................ 1

Civil Aeronautics Act of 1938, ch. 601, 52 Stat. 973 (1938)................... 3

**Regulations:**

14 C.F.R. § 259.5............................................................... 8, 47

14 C.F.R. § 259.5(a)(4)........................................................ 8, 48

14 C.F.R. § 259.5(b)(4)........................................................ 9, 49

14 C.F.R. § 259.5(c)........................................................... 48

14 C.F.R. § 399.84............................................................. 5, 7

14 C.F.R. § 399.84 (2011)..................................................... 14

14 C.F.R. § 399.84(a).......................................................... 15, 39, 40

* Authorities upon which we chiefly rely are marked with an asterisk.

14 U.S.C. § 399.85(d). ........................................................................ 54

14 C.F.R. § 399.88. ............................................................................ 9

14 C.F.R. § 399.88(a). ........................................................................ 51

49 Fed. Reg. 49438 (1984). ............................................................. 4, 5

71 Fed. Reg. 55398 (2006). ......................................... 6, 18, 27, 30, 31, 32

72 Fed. Reg. 65233 (2007). ................................................................ 46

73 Fed. Reg. 28854 (2008). ................................................................ 53

74 Fed. Reg. 68983 (2009). .......................................................... 8, 47, 48

75 Fed. Reg. 32318 (2010). ..................................... 7, 8, 19, 33, 48, 49, 52

76 Fed. Reg. 23110 (2011). ................................. 4, 7, 9, 10, 15, 18, 19, 22, 30, 33,
                                                    34, 37, 39, 40, 46, 49, 50, 51, 52, 54

76 Fed. Reg. 45181 (2011). ................................................................ 10

76 Fed. Reg. 78145 (2011). ................................................................ 11

**Executive Orders:**

Executive Order 12,866, 58 Fed. Reg. 51735 (1993). ...................................... 26, 27

Executive Order 13,563, 76 Fed. Reg. 3821 (2011). ....................................... 27

**Legislative Materials:**

H.R. Rep. 98-793, *reprinted in* 1984 U.S.C.C.A.N. 2857 (1984). ......................... 17

* Authorities upon which we chiefly rely are marked with an asterisk.

-vi-

**Other Authorities:**

"Airlines Less Taxed, But Fliers Aren't," *Chicago Tribune*,
July 26, 2011, Business Section, 2011 WLNR 14758042. .......................... 23, 24

*Allegiant Air, LLC*, DOT Order 2008-9-18 (Sept. 15, 2008),
*available at* http://airconsumer.dot.gov/EO/eo_2008-09-18.pdf. ...................... 35

*Ass'n of Discount Travel Brokers*,
Order 92-5-60, 1992 WL 133179 (May 29, 1992). ........................................... 25

Federal Trade Commission, Dot Com Disclosures (2000), *available at*
http://business.ftc.gov/documents/bus41-dot-com-disclosures-
informationabout-online-advertising.pdf. ........................................................ 26

*In re Truth-in-Billing and Billing Format*,
FCC Docket No. 98-170 (Nov. 13, 2008)........................................................... 25

Office of Aviation Enforcement and Proceedings, DOT,
Answers to Frequently Asked Questions (Aug. 19, 2011,
revised Sept. 6, 2011 and Oct. 19, 2011), *available at*
http://airconsumer.ost.dot.gov/rules/EAPP_2_FAQ_
10-19-2011.pdf. ........................................................ 7, 27, 29, 40, 46

Office of Aviation Enforcement and Proceedings, DOT, Guidance
on Price Increases of Ancillary Services and Products Not Purchased
with the Ticket (December 28, 2011), *accessible from*
http://airconsumer.dot.gov/SA_Advertising.htm. ......................................... 9, 51

Office of Inspector General, Follow-up Review: Performance of
U.S. Airlines in Implementing Selected Provisions of the Airline
Customer Service Commitment (Nov. 21, 2006), *available at*
http://www.oig.dot.gov/sites/dot/files/pdfdocs/
ACSfinal11-21signed.pdf. ........................................................ 46, 47

\* Authorities upon which we chiefly rely are marked with an asterisk.

-vii-

*Pet'n of Joel Kaufman re Ticket Change Penalties*,
  DOT Order 2003-3-11 (Mar. 18, 2003). ........................................................... 50

*Spirit Airlines, Inc.*, DOT Order 2008-12-14 (Dec. 23, 2008),
  *available at* http://airconsumer.dot.gov/EO/eo_2008-12-14.pdf. ...................... 35

*Spirit Airlines, Inc.*, DOT Order 2009-9-8 (Sept. 17, 2009),
  *available at* http://airconsumer.dot.gov/EO/eo_2009-09-08.pdf. ...................... 35

\* Authorities upon which we chiefly rely are marked with an asterisk.

# GLOSSARY

| | |
|---|---|
| ATA | Air Transport Association |
| DOT | Department of Transportation |
| FTC | Federal Trade Commission |
| IATA | International Air Transport Association |

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**Nos.  11-1219, 11-1222**

**SPIRIT AIRLINES, INC., et al.
Petitioners,**

**SOUTHWEST AIRLINES CO.,
Intervenor,**

**v.**

**U.S. DEPARTMENT OF TRANSPORTATION,
Respondent.**

**ON PETITION FOR REVIEW FROM FINAL RULES OF THE
U.S. DEPARTMENT OF TRANSPORTATION**

**BRIEF FOR RESPONDENT**

**JURISDICTIONAL STATEMENT**

The Department of Transportation issued the final rule being challenged here on April 25, 2011.  Spirit Airlines and Allegiant Air filed timely petitions for review on June 15, 2011, and June 16, 2011, respectively, and the petitions were consolidated.  *See* 49 U.S.C. § 46110(a).  This Court has jurisdiction under 49 U.S.C. § 46110(a).

## STATEMENT OF THE ISSUES PRESENTED

At issue here is a final rule of the Department of Transportation designed to protect consumers from unfair and deceptive practices. The issues presented are:

1. Whether the Department reasonably required price advertisements for air transportation to reflect the full cost to the consumer of air travel, including government taxes and fees, and whether that requirement is consistent with the First Amendment.

2. Whether the Department reasonably required, consistent with the prevailing practice, that each airline provide for refunds within 24 hours of purchase, or authorize reservations without payment for 24 hours, for each flight purchased at least one week before the scheduled travel.

3. Whether the Department reasonably prohibited increases in baggage charges after the customer has already committed to travel by reserving and paying for a ticket.

## STATUTES AND REGULATIONS

The relevant statute, 49 U.S.C. § 41712, is reproduced in an addendum to this brief.

## STATEMENT

### A.      Statutory and Regulatory Background.

Federal regulators have long had authority to prohibit any "unfair or deceptive practice . . . in air transportation or the sale of air transportation." 49 U.S.C. § 41712(a). This authority was included in the Civil Aeronautics Act of 1938, and has remained virtually unchanged ever since, despite significant changes to other aspects of federal regulation of air transportation. *See* Civil Aeronautics Act of 1938, ch. 601, § 411, 52 Stat. 973, 1003 (1938) (enacting precursor to 49 U.S.C. § 41712); *Sabre, Inc. v. Dep't of Transp.* 429 F.3d 1113, 1124 n.3 (D.C. Cir. 2005) (describing provision's history).

Congress also vested the Secretary of Transportation with broad authority to set standards and promulgate regulations in keeping with his statutory mandates. 49 U.S.C. 40113(a). There are no other meaningful consumer-protection measures applicable to air travel, as state regulation is expressly preempted, the Federal Trade Commission's general authority to prevent unfair or deceptive practices does not apply to air carriers, and no private right of action exists to enforce 49 U.S.C. § 41712. *See* 49 U.S.C. § 41713 and *Morales v. Trans World Airlines*, 504 U.S. 374 (1992) (state regulation); 15 U.S.C. § 45(a)(2) (FTC authority).

-3-

**B.    The Challenged Regulations.**

This petition for review involves three provisions of a final rule issued in April 2011 to enhance airline passenger protections: (1) a requirement that price advertisements reflect the full cost to the consumer of air travel; (2) a requirement that air carriers include in their customer-service plans a provision authorizing consumers to hold a reservation without payment, or cancel without penalty, for 24 hours so long as the reservation is made at least one week before the scheduled travel; and (3) a prohibition on increasing the price of the passenger's air transportation or related baggage transportation charges after the customer has already purchased and paid for the ticket.  *See* Final Rule, 76 Fed. Reg. 23110 (2011).

**1.    Full-Fare Advertising.**

Pursuant to its authority to regulate unfair or deceptive practices, the Department of Transportation and its predecessor have long required that advertisements for air travel reflect the full cost of  travel.  This requirement began after a consumer complaint in 1983 noted that "an advertisement might feature a price of $399 in large, eye-catching type, together with a small asterisk," noting only "[i]n much smaller type . . . that this price was 'plus 15% taxes and service.'" Civil Aeronautics Board, Final Rule, 49 Fed. Reg. 49438, 49438 (1984).

-4-

The consumer complaint "charged that this practice deceived potential purchasers of package tours and made informed comparisons among tours impossible." *Id.* The Civil Aeronautics Board agreed, and in 1984 it promulgated a rule notifying airlines that it considered "any advertising or solicitation" by an air carrier "that states a price for . . . air transportation . . . to be an unfair or deceptive practice, unless the price stated is the entire price to be paid by the customer to the air carrier . . . for such air transportation." *See* 49 Fed. Reg. at 49440 (adopting 14 C.F.R. § 399.84).

The agency has historically not enforced this rule against air carriers who provide an accurate total price for air transportation exclusive of certain government taxes and fees but describe the type and amount of those taxes and fees in the advertisements or price listings. In the years after the regulation's enactment, the agency issued orders purporting to create a formal exception, but this Court invalidated them on procedural grounds. *See Alaska v. Dep't of Transp.*, 868 F.2d 441 (D.C. Cir. 1989). In its discretion, the agency has nonetheless declined to enforce the rule against advertisers who quote prices exclusive of government taxes and fees, except for the component of the federal excise tax that is calculated as a percentage of the fare and is required by statute to be included in the quoted fare. *See* 26 U.S.C. § 7275.

-5-

In 2006, the Department of Transportation considered altering its price-advertising policy, either by weakening or repealing the rule or by eliminating the exceptions. *See* Withdrawal of Notice of Proposed Rulemaking, 71 Fed. Reg. 55398, 55399 (2006). The agency ultimately declined to alter the rule or its enforcement practice. The agency rejected comments suggesting that the rule should be eliminated or relaxed, concluding that the rule "protects consumers, facilitates price comparison, fosters fare competition, and affords sellers an appropriate degree of freedom to innovate," and reasoning that it would be "poor public policy to weaken or abolish our rule only to have to work our way back to the present equilibrium, case by slow and costly case, via enforcement under § 41712." *Id.* at 55401. The agency also declined to eliminate the exception for government taxes and fees, although it noted "the overwhelming support among individuals for enforcing § 399.84 as written." *Id.* at 55402. According to the agency, strict enforcement "would still create marketing difficulties for sellers without necessarily making prices more transparent to consumers." *Id.*

The agency once again had occasion to revisit this rule in the course of its more recent efforts to improve passenger protections. In June 2010, the Department issued a notice of proposed rulemaking proposing to "chang[e] its enforcement policy concerning this rule to enforce the 'full price advertising'

-6-

provision of the rule as it is written." Proposed Rule, 75 Fed. Reg. 32318, 32327 (2010). After a full notice-and-comment rulemaking, the agency concluded that the exception permitting airlines to exclude certain government taxes from the quoted price should be eliminated.

Under the new rule, any price advertising for air transportation is an unfair or deceptive practice "unless the price stated is the entire price to be paid by the customer." 76 Fed. Reg. at 23166 (amending 14 C.F.R. § 399.84). Having stated the total price, the advertiser remains free to itemize charges included within it, such as government taxes and fees. *Id.* The advertiser may not, however, display such price components "prominently" or "in the same or larger size as the total price." *Id.* Subsequent guidance has defined the term "prominently" to prohibit advertisements that list price components "in a more prominent place on a web page or in a print advertisement than the advertised total fare," such as "at the top of the page, ahead of the total price," or with "special highlighting that sets it apart and makes it more prominent than the total price." Office of Aviation Enforcement and Proceedings, DOT, Answers to Frequently Asked Questions, at 22 (Aug. 19, 2011, revised Sept. 6, 2011 and Oct. 19, 2011).[1]

---

[1] http://airconsumer.ost.dot.gov/rules/EAPP_2_FAQ_10-19-2011.pdf

### 2.     Refund Policies in Customer-Service Plans.

The new regulations also require certain changes to airline customer-service plans.  In December 2009, DOT had issued a final rule requiring each U.S. carrier to adopt a customer-service plan that addresses certain topics, to "audit its own adherence to its plan annually," and to make the audit results available to the Department for review upon request.  Final Rule, *Enhancing Airline Passenger Protections*, 74 Fed. Reg. 68983, 69003 (Dec. 30, 2009) (adding 14 C.F.R. § 259.5).  Of particular relevance here, an airline's customer-service plan was required to address the airline's policy regarding "[a]llowing reservations to be held without payment or cancelled without penalty for a defined amount of time." *Id.* (adding 14 C.F.R. § 259.5(a)(4)).

In the rulemaking at issue here, the agency considered further steps to "ensure that [airline customer-service] plans are specific and enforceable."  75 Fed. Reg. at 32323.  The agency proposed "establishing minimum standards for the plans," which would "result in consumers being better informed or protected." *Id.*  The minimum standards were based on a review of existing customer-service plans and a selection of "services already provided by some carriers that appear to be 'best practices.'"  *Id.*  The only portion of the minimum standards challenged here requires airlines to hold reservations or allow cancellation without penalty for

-8-

twenty-four hours "if the reservation is made one week or more prior to a flight's departure."  76 Fed. Reg. at 23165 (amending 14 C.F.R. § 259.5(b)(4)).

###    3.    Post-Purchase Price Increases.

Finally, the April 2011 regulations specify that it is an unfair or deceptive practice to increase the price of air transportation or associated fees such as baggage-handling charges after the consumer has completed the purchase by paying the full amount owed.  76 Fed. Reg. at 23167 (adding 14 C.F.R. § 399.88). Price increases for government taxes are permitted after full payment if the customer agrees and provides written consent prior to purchase of the air transportation.  *Id.*  The agency has also recently informed the airlines that it will undertake another rulemaking process to assess the appropriateness of applying the rule to ancillary charges other than baggage charges that traditionally have been included in the price of air transportation.  Office of Aviation Enforcement and Proceedings, DOT, Guidance on Price Increases of Ancillary Services and Products Not Purchased with the Ticket (December 28, 2011).[2]  Until the conclusion of that rulemaking, the agency will only enforce the rule as applied to charges the consumer has already paid, to any charges for carry-on baggage and first and second checked bags, and to mandatory charges like fuel surcharges.

---

[2] Accessible from http://airconsumer.dot.gov/SA_Advertising.htm

## C.    Prior Proceedings.

The full-fare advertising provision was originally scheduled to take effect

on October 24, 2011, and the other provisions were to take effect on August 23,

2011.  *See* 76 Fed. Reg. at 23157.  Spirit Airlines and Allegiant Air timely filed

petitions for review in this Court, which have been consolidated.  Southwest

Airlines has intervened in the case, challenging only the full-fare advertising

provision.  All three airlines sought a stay from the agency pending this Court's

review.  The Department denied those requests, and this Court subsequently

denied motions for a stay pending review.  *See* Spirit/Allegiant Stay Denial [JA

____]; Southwest Stay Denial [JA ____]; Order, Nos. 11-1219, 11-1222 (D.C. Cir.

Sept. 19, 2011).

The Department has, however, granted in part the request of other affected

entities, who are not parties here and who have not filed petitions for review, to

extend the effective date of certain provisions of the regulations (including all the

provisions at issue here) to January 24, 2012, to allow more orderly

implementation.  *See* 76 Fed. Reg. 45181 (July 28, 2011).  More recently, the

agency has extended the effective date of the full-fare advertising provision by

two additional days, to January 26, 2012, to allow airlines to avoid implementing

the provision on a day of the week that tends to be the most busy.  *See* 76 Fed.

Reg. 78145 (Dec. 16, 2011).

## SUMMARY OF ARGUMENT

1.  Under the challenged full-fare advertising rule, airlines must disclose the

full price that the consumer will actually need to pay for air travel, inclusive of

taxes and fees.  The airlines do not dispute that the total price of air transportation

must be disclosed.  Rather, they challenge the manner in which the agency

required disclosure.  According to the airlines, they should be permitted to

advertise prominently the "base fare" they are charging for the flight, and disclose

the amount of government taxes and fees that the consumer is also required to pay

only in smaller type or on a separate web page accessed by a hyperlink.  The

agency reasonably prohibited prominent advertisements of a price that does not

constitute the full price of air travel.

The agency's conclusion was supported by numerous consumer comments

complaining about advertisements that are insufficiently clear about the total price

of air transportation.  Although the airlines seek to dismiss these comments for

various reasons, they cannot seriously dispute that consumers overwhelmingly

prefer that quoted prices include all applicable taxes and fees.  The airlines

-11-

provide no evidence of their own that consumers are better informed by price quotes that exclude certain mandatory charges.

The new rule expressly authorizes airlines to communicate additional information, such as the portion of that total price that constitutes government taxes and fees, so long as the additional communication is done in a manner that does not inhibit the customer's ability to discern the total price.  The airlines' suggestion that the rule somehow precludes them from communicating relevant information to consumers is therefore without merit.

The agency acknowledged and adequately explained the basis for departing from its previous practice of allowing price advertisements to exclude certain government taxes and fees.  Although the agency had no obligation to demonstrate that its new rule was better than the version that was superseded, it nonetheless explained that the change in practice was a reasonable response to recent developments in the air-travel marketplace that made it more difficult for customers to ascertain the true cost of flying.

For similar reasons, the full-fare advertising rule is consistent with the First Amendment.  The requirement that advertisers disclose the total cost of air transportation easily satisfies the deferential standard applicable to required disclosures.  The restriction on the manner in which advertisements list

-12-

components of the total price also satisfies any plausibly applicable constitutional standard. The modest restriction on the manner of itemizing the components of the price to be paid satisfies the constitutional standard applicable to commercial speech. And the rule in no way restricts political speech, as it applies only to price advertising and explicitly authorizes disclosure of all the relevant information.

2. The requirement that airlines hold a reservation without payment or permit cancellation without penalty within 24 hours of ticket purchase was a reasonable response to documented problems with airlines' adherence to their customer-service plans. Incorporating a "best practice" from the industry, the rule protects consumers from unexpected fees associated with prompt cancellation while requiring only modest changes to the airlines' practices.

3. The prohibition on post-purchase price increases prevents airlines from enticing consumers with low fares and baggage charges only to raise the price once the consumer has paid for the (often nonrefundable) ticket. The airlines' challenge is largely leveled at the rule's application to ancillary charges other than baggage charges, which the agency has now declined to enforce pending a new rulemaking proceeding.

-13-

## STANDARD OF REVIEW

The Department of Transportation's decisions may be disturbed only if they were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The agency's interpretation of the statute it is charged with administering is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984).

## ARGUMENT

**I.    The full-fare advertising rule is a reasonable exercise of the agency's authority and consistent with the First Amendment.**

**A.    The rule is a reasonable exercise of the agency's authority that is amply supported by the record.**

The Department of Transportation has authority to issue regulations to prohibit any "unfair or deceptive practice or . . . unfair method of competition in air transportation or the sale of air transportation." 49 U.S.C. § 41712(a); *see also id.* § 40113 (authority to issue regulations). The Department has long exercised this authority to prohibit price advertisements that do not display the full cost to the consumer of air transportation. *See* 14 C.F.R. § 399.84 (2011) (prior version of rule, which dates back to 1984). Its authority to do so, and the reasonableness of doing so, are not in dispute.

-14-

Instead, this case concerns the Department's recent decision to end its enforcement practice of allowing sellers of air transportation to exclude certain taxes and fees from the listed price, so long as those amounts are disclosed separately. Under the new rule, price advertisements must list the entire cost to the consumer of air transportation—that is, the amount that would be charged to the consumer's credit card if he or she elected to purchase a ticket. *See* 76 Fed. Reg. at 23166 (amending 14 C.F.R. § 399.84(a)). As the agency explained, "[i]n order to understand the true cost of travel, consumers need to be able to see the entire price they need to pay to get to their destination the first time the airfare is presented to them." *Id.* at 23143.

Although the airlines object to this change, they do not dispute that they must disclose to consumers the taxes and fees that will be applicable to their purchase. See Spirit/Allegiant Br. 24 (arguing that under current regime "consumers are informed *both* of what the airlines are charging *and* what the government is taxing"); Southwest Br. 19 (accepting that customers must be "fully informed of the existence of government taxes and fees on the same website screen or printed page where the airfare is initially advertised"). They instead focus their challenge on the *manner* in which taxes and fees must be disclosed. Instead of quoting the total price that the consumer will be required to pay, the

-15-

airlines wish to state separately the "base fare" charged by the airlines and

mandatory taxes and fees that are collected by the airline and passed along to a

government.  *See* Spirit/Allegiant Br. 24; Southwest Br. 19.  Moreover, for web

advertising, the airlines seek flexibility to list the "base fare" on one web page and

provide "a hyperlink to a separate screen that gives the details about the taxes and

fees."  Southwest Br. 6; *see also* Spirit/Allegiant Br. 33.  The Department

reasonably rejected this approach, concluding that consumers should not be

required to add up various charges gleaned from different web pages to learn the

total amount that would be owed.

The Department provided ample basis for this conclusion under the

applicable standard.  Under 49 U.S.C. § 41712, the agency has authority to

prohibit a practice "merely on the [agency's] conclusion, after an investigation

determined to be in the public interest, that a carrier is engaged in an 'unfair or

deceptive practice.'  No findings that the practice was intentionally deceptive or

fraudulent or that it in fact has caused injury to an individual are necessary."

*Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 302 (1976) (citing *Am. Airlines v.*

*N. Am. Airlines*, 351 U.S. 79, 86 (1956)).

As the Seventh Circuit has explained in interpreting this provision, the

"basic issue" regarding "the tendency of a marketing practice to deceive a

-16-

significant number of consumers . . . has traditionally been treated as judgmental rather than evidentiary." *United Air Lines v. Civil Aeronautics Board*, 766 F.2d 1107, 1113 (7th Cir. 1985). The statute at issue here was enacted as a replica of a statute conferring authority upon the Federal Trade Commission over unfair and deceptive practices in other industries. *See id.* at 1111-12 (citing 15 U.S.C. § 45). The Trade Commission had long "established, and the courts had accepted, the principle that the tendency of a practice to deceive consumers is a question the Commission can decide on the basis of common sense and experience, without taking testimony about consumers' actual behavior." *Id.* at 1112. The airlines offer no basis to question the Seventh Circuit's conclusion that the Department of Transportation "has the same freedom to base a finding of deceptive practice on its general experience as the Trade Commission does." *Id.* at 1113 (citing *Am. Airlines*, 351 U.S. at 86).

Nor is there any merit to the airlines' suggestion that the deregulation of the airline industry somehow limited the Department's authority. *See* Spirit/Allegiant Br. 20-22. To the contrary, when it eliminated the Civil Aeronautics Board, Congress concluded that "there should continue to be authority in the federal government to protect consumers against unfair and deceptive practices." H.R. Rep. 98-793, at 1, *reprinted in* 1984 U.S.C.C.A.N. 2857, 2857, 2860 (1984); *see*

-17-

*also United Air Lines*, 766 F.2d at 1112 ("Congress, looking forward to the period after abolition of the Board, was very concerned to preserve (in the Department of Transportation) authority to enforce [49 U.S.C. § 41712].").

Consumers have consistently confirmed that advertising of prices below the total cost of travel causes confusion. In 2006, the last time the Department considered this issue, it received over 700 responsive comments, "nearly all from individuals who are not travel professionals," and nearly 500 of whom favored requiring a total price inclusive of taxes and fees. 71 Fed. Reg. 55398, 55399 (2006). Some of these commenters complained that fare advertising was "confusing and deceptive to the point of amounting to 'bait and switch' tactics." *Id.*

Commenting consumers in this proceeding once again overwhelmingly agreed that the quoted price should include taxes and fees. *See* 76 Fed. Reg. at 23142. The airlines can suggest otherwise only by placing irrelevant constraints on the type of comments they are willing to accept as evidence of consumer confusion. According to the airlines, "only six individual comments suggested existing airline price displays might be confusing or misleading," and none of these comments "discusses actual episodes of being deceived by airline advertising." Spirit/Allegiant Br. 25; *see also* Southwest Br. 20 (same argument).

-18-

This characterization artificially narrows the inquiry and in any event is flawed on its own terms.

To reach their "six *individual* comments" figure, the airlines must entirely discount comments that were made through the agency's "Regulation Room," which allowed interested members of the public to submit comments in an online forum and to respond to each other's comments, with a summary of the discussion submitted to the rulemaking docket after the commenters had an opportunity to review the summary.  *See* 75 Fed. Reg. at 32319.  As the Department explained, and the airlines do not dispute, these comments tended to "show consumers feel deceived when the total price, including taxes and fees, is not quoted to them after an initial fare inquiry."  76 Fed. Reg. at 23142-43.  The airlines seek to dismiss these comments based on the unremarkable observation that comments made through the Regulation Room are "'not the same as commenting in the rulemaking docket.'"  Spirit/Allegiant Br. 26 n.4 (quoting 75 Fed. Reg. at 32319).  The mere fact that comments in this forum are different from other comments provides no basis for ignoring the input of consumers who found the Regulation Room forum more accessible.

Nor is there any basis for discounting the Regulation Room comments because the agency opened the discussion by expressing its view that the practice

-19-

of quoting prices exclusive of taxes and fees was confusing.  The agency's

description of the challenged practice properly focused attention on the issue

presented in the rulemaking proceeding, and the suggestion that consumers

somehow felt pressured to describe confusion that they did not really experience is

far-fetched.  Moreover, Southwest's contention that the agency "failed to disclose

in the Regulation Room setup the fact that all applicable taxes are disclosed

alongside the base fare and before the ticket is purchased," Southwest Br. 21,

implausibly presumes that the consumers who were sufficiently interested to

provide comments had no firsthand experience with price advertising and instead

needed to be informed by the agency about current advertising practices.  To the

extent that commenters were unaware that information about taxes and fees is

available in price advertising, that lack of information only underscores that the

existing method of disclosing taxes in advertisements fails to make interested

consumers aware of the amount of taxes at the appropriate time.

Even apart from the Regulation Room comments, the airlines do not dispute

that the agency received comments from individuals supporting the rule as finally

promulgated.  The airlines understate, however, the number and significance of

these comments.  For example, one comment stated that "[a]dvertisement of

airfares without the add-ons of taxes, gate fees, luggage fees, and so forth is a

deceptive practice." Comment of Michael Reed [JA ___]. The airlines do not

mention this comment, nor do they explain why it did not "suggest[] existing

airline price displays might be confusing or misleading." Spirit/Allegiant Br. 25.

Another comment suggested that the full fare should be advertised and

"[t]he small print can be used, if an airline wishes, to break out taxes, etc.," and

noted that "[t]his is opposite to the way many airlines now advertise on their

webpages and elsewhere." Comment of Thomas Scott Bunton [JA ___]. Yet

another comment asked the agency to "[p]lease provide in the final rule that any

advertisements or offering of fares by an airline or travel agency must present

prominently the complete fare including all government fees and taxes (though

components may be presented separately if desired)," because "[p]rices are nearly

impossible to compare among websites now because offerors vary about what is

included in the fares." Comment of Steven Flint [JA ___]; *see also* Comment of

Daniel P. Cope, at 3 [JA ___] ("I support the full fare advertising requirements.").

The airlines make no mention of these comments either.

Southwest's assertion that the "record does not include a single example of

a consumer actually being deceived by the decades-old practice" is both mistaken

and beside the point. *See* Southwest Br. 27. The Department was not required to

cite particular examples, as opposed to the overwhelming consumer sentiment in

-21-

favor of the rule.  *See Nader*, 426 U.S. at 302.  But in any event, in the Regulation Room, "[m]any [commenters] recount[ed] experiences of believing they [were] getting one price for a ticket only to discover that undisclosed taxes, fees, etc. makes the final price much higher."  Regulation Room Summary, at 20 [JA ____].[3] And one of the "individual" comments that the airlines mention in their brief also complained about being misled by advertising in searching for tickets for a particular trip.  *See* Comment of Avram Frisch [JA ____].

In addition, the agency received complaints independent of the rulemaking proceeding, "some of which specifically mention feeling deceived when they are not quoted the full price to be paid after an initial inquiry."  76 Fed. Reg. at 23143. The airlines seek to dismiss these complaints on the ground that there are not very many complaints in that forum about airline advertising.  *See* Spirit/Allegiant Br. 27.  More noteworthy is that some consumers took the initiative to file complaints outside any rulemaking proceeding.  Only by separating these complaints from the various other types of consumer responses cited above can the airlines assert that consumers should have complained in larger numbers.

---

[3] The individual Regulation Room comments are available at http://regulationroom.org/airline-passenger-rights/fare-advertising-and-practices/

In short, it is unclear what additional evidence of consumer sentiment or harm could be gathered. On several occasions, the agency has solicited comments about whether the practice of quoting prices exclusive of taxes and fees was deceptive, and each time the commenters overwhelmingly confirmed that it was. Other consumers were sufficiently troubled that they submitted unsolicited complaints to the agency. All of this evidence confirmed the intuitive proposition that consumers are confused by price quotes significantly lower than the actual cost of air travel.

Against the weight of all this consumer response and common sense, the airlines marshal no evidence of their own to support the counterintuitive proposition that consumers are somehow better informed when advertisements quote a price that is substantially lower than the amount the consumer will need to pay for air travel. All available evidence suggests otherwise. For example, when a tax on air travel briefly expired last summer, most airlines promptly reacted by increasing prices to absorb as profit the amount of the expired tax. A Southwest spokesperson justified the move on the ground that consumers would not need to pay any more. *See* "Airlines Less Taxed, But Fliers Aren't," *Chicago Tribune*,

July 26, 2011, Business Section, at 4, 2011 WLNR 14758042.[4]  Like the airlines in that context, the agency recognized in its rulemaking that consumers are more concerned with the total amount owed than with the breakdown of base fare as opposed to taxes and fees.

Southwest does not advance its argument by relying on *National Fuel Gas Supply Corp. v. FERC*, 468 F.3d 831 (D.C. Cir. 2006).  There, the Federal Energy Regulatory Commission had barred a particular practice employed in the marketing of natural gas, claiming to have shown both a theoretical threat of abuse and record evidence of abuse.  *Id.* at 839.  This Court concluded that none of the cited record evidence actually related to the practice that the Commission proposed to prohibit.  *See id.* at 841-44.  Because the "Commission did not seek to justify the Order based *solely* on the theoretical danger," this Court could not uphold the order if "the claimed record evidence d[id] not support" it.  *Id.* at 839-40 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943)); *see also id.* at 844 (expressing no view on "whether a theoretical threat *alone* would be sufficient" to justify the Commission's order).  Here, by contrast, the agency did not base its order on any evidence that it had not in fact received.  As the agency found, and as

---

[4] A handful of airlines, including Spirit Airlines, declined to raise prices, touting it as a benefit to consumers, thus underscoring that consumers focus on the bottom-line amount they must pay.

discussed above, consumers have consistently advocated the rule that the
Department ultimately adopted.

Spirit and Allegiant's reliance on the Department's 1992 decision in
*Association of Discount Travel Brokers* is similarly misplaced.  There, the agency
rejected an attempt to require carriers to give additional notice of certain features
of their frequent flyer programs, because the petitioners who claimed that the
programs were deceptive had not provided any "program materials" to
"substantiate the allegation" or "attempted to show that the actual notice given by
any carrier is in fact inadequate."  *Ass'n of Discount Travel Brokers*, Order 92-5-
60, at 11, 1992 WL 133179, at *6 (May 29, 1992).  Here, the agency was well
aware of the actual advertising practices permitted by the former rule, and was
made aware of their deficiencies.

The airlines similarly err in relying on guidance from the Federal Trade
Commission.  The FTC's discussion of the appropriate way to list charges in bills,
as opposed to advertisements, is plainly inapposite, as is its opinion on advertising
in 1989, before the Internet age.  *See* Spirit/Allegiant Br. 31 (citing FTC
Comments, *In re Truth-in-Billing and Billing Format*, FCC Docket No. 98-170,
n.32 (Nov. 13, 2008); Letter from FTC Sec'y to Att'y General of Kansas (Feb. 24,
1989)).  And the FTC did not purport to opine on the specific application of its

-25-

policies to airline advertisements in its general guidance about the importance of making disclosures clear and conspicuous, instead noting that each disclosure must be evaluated "in the context of the ad as a whole." Federal Trade Commission, Dot Com Disclosures, at 6 (2000).[5] It is the Department of Transportation, and not the FTC, that has jurisdiction over and expertise in advertisements for airfares. *See* 15 U.S.C. § 45(a)(2) (no FTC authority over air transportation). Such advertisements present unique concerns, including the ways in which airfare is advertised and purchases are made, and the lack of other applicable means of eliminating deceptive practices. *See, e.g.*, 49 U.S.C. § 41713 and *Morales v. Trans World Airlines*, 504 U.S. 374 (1992) (no state regulation).

The airlines' critique of the agency's cost-benefit analysis is both mistaken and beside the point. *See* Spirit/Allegiant Br. 34-35. The agency did not claim to justify the rule based on its analysis of the amount of time consumers would save, which was instead developed to perform a cost-benefit analysis pursuant to Executive Orders designed to "improve the internal management of the Federal Government" that explicitly declare that they do "not create any right or benefit" against the United States or its agencies. Executive Order 12,866, § 10, 58 Fed.

---

[5] http://business.ftc.gov/documents/bus41-dot-com-disclosures-information-about-online-advertising.pdf

Reg. 51735, 51744 (1993); Executive Order 13,563, § 7(d), 76 Fed. Reg. 3821, 3823 (2011) (similar language). But in any event, the airlines' critique dramatically overstates the cost of the rule. Spirit and Allegiant mistakenly suggest that when taxes and fees may vary depending upon the particular outgoing and return flights selected, "airlines will either have to generally raise prices so all routings show the same price, or limit the routing options available to passengers and thus reduce their travel choices." Spirit/Allegiant Br. 35. Nothing in the rule requires either approach. The agency has expressly endorsed "using a range of prices or using the word 'from' with the minimum price if need be." 71 Fed. Reg. at 55402. This approach continues to be permissible under the new rule, so long as the stated prices include applicable taxes and fees. *See* Answers to Frequently Asked Questions, *supra* n.1, at 23 (discussing analogous rule for tour operators).

## B. The Department reasonably refused to allow prominent statements of taxes and fees.

Having determined that customers should be told the full amount they will need to pay for air transportation, the agency reasonably declined to allow the airlines to state, with equal prominence, the breakdown of that figure as between base fare, airline-imposed fees, and government taxes and fees. Allowing airlines

to call attention to figures other than the total price would undermine the purpose of the requirement that the total cost of air transportation be clearly displayed.

Southwest highlights the error of its analysis by comparing the display of government taxes and fees to the display of optional charges imposed by the airlines. Southwest Br. 29. Optional charges that are not included in the price but are very likely to be incurred, like baggage charges, must be disclosed to allow the consumer to understand the total price of air travel. Describing the portion of the advertised price attributable to government taxes and fees and other mandatory charges does not serve that purpose. Moreover, if an airline displays in a similar fashion optional charges that would be *added* to the price and mandatory charges that are *included* in the price, the potential for confusion is self-evident.

Spirit and Allegiant, for their part, attack the restriction on displaying taxes and fees "prominently" by giving the word "prominently" a meaning that is implausible in this context and contrary to the interpretation adopted by the Department. As the Department has explained (in guidance that Spirit and Allegiant cite elsewhere in their brief, *see* Spirit/Allegiant Br. 55) the prohibition on breaking out taxes and fees prominently "means that the break-out of per-person charges cannot be in a more prominent place on a web page or in a print advertisement than the total advertised fare." Answers to Frequently Asked

-28-

Questions, *supra* n.1, at 22. The break-out thus cannot be "at the top of the page, ahead of the total price," or "have special highlighting that sets it apart and makes it more prominent than the total price." *Id.* There is no basis for Spirit and Allegiant's suggestion that the rule would prohibit an advertisement that "informs customers of government taxes in a manner that is (in DOT's view) not sufficiently *unclear.*" Spirit/Allegiant Br. 38 (emphasis in original).

**C.    The agency amply explained its modest departure from prior policy.**

The Department's past decisions not to impose the current version of the full-fare advertising rule in no way render its current determination arbitrary and capricious. As the Supreme Court has explained, there is "no basis in the Administrative Procedure Act . . . for a requirement that all agency change be subjected to more searching review." *FCC v. Fox Television Stations, Inc.*, 129 S. Ct. 1800, 1810 (2009). Rather, though an agency must ordinarily "display awareness that it *is* changing position" and "show that there are good reasons for the new policy," the agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for

it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *Id.* at 1811.

Here, the Department made clear that it was consciously altering its enforcement policy. *See* 76 Fed. Reg. at 23142 (describing "Change in Enforcement Policy"). And no prior agency decision undermines the Department's reasoning. If anything, the agency's earlier analysis reaffirms the reasonableness of the new rule.

In 2006, when the Department last considered the full-fare advertising rule, it made the judgment that the prior rule, which included an exception for taxes and fees, "protects consumers, facilitates price comparison, fosters fare competition, and affords sellers an appropriate degree of freedom to innovate." 71 Fed. Reg. at 55401. Its discussion of "the reasons for maintaining the status quo," which it found "most compelling," was primarily addressed to comments that sought to *weaken* the rule, not to comments that sought to eliminate the exception for taxes and fees. *Id.* As the agency explained, it would "be poor public policy to weaken or abolish our rule only to have to work our way back to the present equilibrium, case by slow and costly case, via enforcement under § 41712." *Id.*

The rule that the Department kept in place in 2006 required that each advertisement show "the existence and amount of [taxes and fees] clearly so that

-30-

consumers can easily determine the total fare." *Id.* at 55398. The Department rejected the "argument that sellers in other industries with high taxes and government-imposed fees, such as hotels and rental-car agencies, are not required by Federal regulation to disclose these amounts to the consumer before a sale is made" on the ground that "both the Federal Trade Commission and the States may regulate advertising in these other industries." *Id.* In the context of rental cars, for example, the "National Association of Attorneys General adopted enforcement guidelines" that required that "[a]ny surcharge or fee that consumers must generally pay at any location in order to obtain or operate a rental vehicle must be included in the total advertised price of the rental." *Id.* Similarly, the "argument that consumers know that advertised prices do not include taxes ignores the vast difference between the sales tax applicable to most goods and services and the much higher taxes and fees—both absolutely and as a percentage of the base price—applicable to airfares." *Id.* at 55402.

After explaining at some length the importance of requiring sellers to disclose the full fare, including taxes, to customers in a timely manner, the agency briefly addressed comments that suggested that the rule be amended to eliminate the enforcement practice that permitted airlines to exclude government-imposed taxes and fees collected on a per-passenger basis from the advertised fare so long

-31-

as they were displayed clearly elsewhere in the advertisement. The agency concluded that "the overwhelming support among individuals for enforcing § 399.84 as written notwithstanding, the comments fail to establish a rationale for undoing over 20 years of permitting exceptions to the rule's strict terms as a matter of enforcement policy." *Id.* at 55402. This conclusion reflected the agency's judgment at the time that enforcement without exceptions "would still create marketing difficulties for sellers without necessarily making prices more transparent to consumers." *Id.* The agency noted, however, that the "strong support from consumers" for eliminating the exceptions did "serve to fortify the case against eliminating or diluting the rule and enforcement policy." *Id.*

The Department has now reconsidered the matter and made the judgment that a stricter enforcement policy is warranted. As noted, the agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one. " *Fox Television*, 129 S. Ct. at 1811. But here, in any event, the agency has provided ample justification for its change in policy.

To begin with, the change in policy did not dramatically alter the rule. The prior rule required price advertisements to disclose applicable taxes and fees "so that consumers can easily determine the total fare." 71 Fed. Reg. at 55398. The

new rule simply requires advertisers to take the additional step of adding those taxes and fees to the other applicable charges to state the total price of air travel.

The agency adequately explained this modest alteration based on "changes in the advertising methods used by sellers of air transportation since the Department declined to revise its full-fare rule in 2006." 76 Fed. Reg. at 23143. For example, sellers now use new methods of marketing, such as Facebook and Twitter. *Id.* Consumers viewing advertisements through "e-mail newsletters, social networking Web sites, text messages, and applications designed for many different kinds of cell phones," for example, may not access hyperlinks containing information about taxes and are thus less likely to be "easily able to determine the total cost of air transportation" and more likely to be "deceived regarding the true price." 75 Fed. Reg. at 32327.

In addition, many carriers, such as Spirit and Allegiant, are "increasingly unbundling the cost of air travel, which further obscures the total fare to paid by the consumer." *Id.* Unlike when the agency last considered the matter in 2006, many airlines have begun to impose separate charges for optional services, like the carriage of baggage, that consumers are very likely to purchase. Consumers who wish to understand the total cost of air travel must determine which of the optional charges they are likely to incur and add them to the quoted price. In this changed

-33-

environment, the Department reasonably declined to require consumers also to add the various mandatory government taxes and fees to the quoted price to arrive at the actual total cost, and Southwest is mistaken to suggest that the unbundling of airline-imposed charges can somehow be divorced from the question of how readily a consumer can ascertain the total price. *See* Southwest Br. 24-26.

The total cost to the consumer may also be obscured when airlines advertise fares that are available only with multiple connections. *See* 76 Fed. Reg. at 23143. Because some taxes and fees are based on the number of airports the traveler passes through, passengers on connecting flights incur higher taxes and fees, which can "become a significant portion of the price to be paid by consumers." *Id.* The agency reasonably concluded that consumers who seek to compare nonstop flights to connecting flights "need a full picture of the total price to be paid in order to compare fares and routings." *Id.*[6]

Efforts to quote a fare lower than the total cost of travel have intensified in other ways since 2006. In 2008, for example, Spirit and Allegiant each charged

---

[6] In contesting the relevance of connecting flights, the airlines mistakenly focus on the average number of flight segments per round trip ticket purchased, rather than on the types of advertisements that lure consumers to a particular airline. *See* Spirit/Allegiant Br. 33-34. The Department is unaware of any data that quantify the prevalence of advertisements that seek to entice consumers with low prices that are available only with one or more connections.

"convenience fees" that they deemed separate from the "base fare" and were thus

excluded from the quoted price.  The Department concluded that this practice

violated the full-fare advertising rule, and each airline agreed to the assessment of

civil monetary penalties.  *See Allegiant Air, LLC*, DOT Order 2008-9-18 (Sept. 15,

2008)[7] ($50,000.00 compromised civil penalty); *Spirit Airlines, Inc.*, DOT Order

2008-12-14 (Dec. 23, 2008)[8] ($40,000.00 compromised civil penalty); *see also*

*Spirit Airlines, Inc.*, DOT Order 2009-9-8, at 6-7 (Sept. 17, 2009)[9] (similar

violation).

　　While the prior rule prohibited these particular practices, enforcement

actions under the prior rule did not suffice to prevent the airlines from capturing a

consumer's attention with low prices that represent a fraction of the actual cost.

Instead, the airlines adjusted their advertising practices to achieve technical

compliance with the rule while emphasizing a base fare that is significantly lower

than the total amount the consumer will pay.  Spirit's web site, for example,

provides a calendar with the "base fare" for each date in a month, exclusive of

---

[7] http://airconsumer.dot.gov/EO/eo_2008-09-18.pdf

[8] http://airconsumer.dot.gov/EO/eo_2008-12-14.pdf

[9] http://airconsumer.dot.gov/EO/eo_2009-09-08.pdf

taxes and carrier fees, in bold print.[10]  Only for the date the customer has selected does the web site indicate, in unbolded font at the bottom, the price inclusive of taxes and fees.  The purpose and effect of the web site's format is to draw the customer's attention to the base fare ($14 in the example reproduced in the addendum to this brief) rather than the actual total cost of travel ($41.69 in this example), which may be substantially higher.  *See* Spirit Airlines, "Flight Availability" (reproduced in addendum to this brief).

Allegiant's web site also shows a calendar with base fares for each date.  It does not, however, provide the total price for each date including all taxes and fees, instead giving only the range of total prices for all dates shown on the calendar.  A consumer's attention is therefore directed to the precise dollar amount for each date, which represents a fraction of the total cost.  The consumer cannot determine the amount of taxes and carrier fees associated with each individual date without proceeding further in the booking process.  *See* Allegiant Air, "Your Vacation Package Search" (reproduced in addendum to this brief).

---

[10] The discussion in this brief is based on the Spirit and Allegiant web sites as they existed on December 28, 2011.  The sites will need to change when the new rule takes effect, so we have reproduced portions of the sites as of that date in an addendum to this brief.

The new rule will prohibit these practices, which only obfuscate fares for consumers and make price comparisons among carriers more difficult. Compliance with the new rule will simply require that the calendar display the total cost of travel for each date.

### D.     The rule is consistent with the First Amendment.

#### 1.     The rule readily satisfies the standards applicable to commercial speech and disclosures.

The airlines do not advance their argument by seeking to give it a constitutional dimension.  The airlines cannot seriously contend that it is unconstitutional to require them to reveal the total cost of the air travel the consumer is considering purchasing.  Even the agency's prior enforcement practice, which the airlines seek to reinstate, required disclosure of all applicable taxes and fees.  *See* 76 Fed. Reg. at 23142 (describing prior practice).

The Supreme Court has long recognized that disclosure requirements constitute minimal impositions on commercial speech, particularly where the seller must merely provide "purely factual and uncontroversial information about the terms under which his services will be available."  *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985).  In *Milavetz, Gallop & Milavetz, P.A. v. United States*, 130 S. Ct. 1324 (2010), for example, the Supreme Court

-37-

upheld a statute requiring persons who provide bankruptcy assistance to include in their advertisements the statement "'We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code.'" *Id.* at 1330 (quoting 11 U.S.C. § 528(a)(4)). As the Court explained, the advertiser's "constitutionally protected interest in *not* providing the required factual information is 'minimal.'" *Id.* at 1339 (quoting *Zauderer*, 471 U.S. at 651). A requirement that an advertiser disclose the actual total cost of the service being advertised plainly satisfies scrutiny under this standard.

Moreover, as anyone who has purchased gasoline at the pump can attest, there is nothing novel about requiring sellers to reveal to consumers the full cost of the service offered, particularly where an item is subject to special taxes and fees beyond the generally applicable sales tax. Even airlines themselves have long been required to include in their quoted prices the component of the federal excise tax that is calculated as a percentage of the fare. *See* 26 U.S.C. § 7275. The airlines do not now suggest that this requirement is unconstitutional.

In some cases, taxes and fees are not technically owed by the consumer, but rather paid by the retailer or wholesaler and incorporated into the price the retailer elects to charge. In such cases, the price paid by (and quoted to) the consumer necessarily reflects the effect of the taxes. The airlines offer no basis for ascribing

-38-

controlling First Amendment significance to the fact that in this case, the taxes and fees happen to be technically owed by the consumer and passed through the airlines to the U.S. Treasury.

In short, the government can plainly require sellers prominently to display the actual cost of air travel. Thus, although the airlines purport to challenge the entire rule on constitutional grounds, they focus their attention on the other aspect of the rule, which prohibits them from displaying, with equal prominence, the "base fare" that will be paid to the seller exclusive of taxes and fees. Their challenge to that part of the rule is similarly without merit.

Nothing in the rule prohibits the airlines from informing customers about the extent to which the quoted fare reflects government taxes and fees. To the contrary, the rule explicitly permits airlines to state taxes or base fares "separately or through links or 'pop ups' on websites that display the total price." 76 Fed. Reg. at 23166 (amending 14 C.F.R. § 399.84(a)). There is therefore no basis for the airlines' suggestion that the agency has "decid[ed] on a blanket prohibition against separate disclosure of applicable government taxes and fees," Southwest Br. 35, or "chosen prohibition over disclosure," Spirit/Allegiant Br. 41.

To ensure that other figures are not confused with the actual total price, the rule simply requires that they not be "displayed prominently" or "presented in the

-39-

same or larger size as the total price." 76 Fed. Reg. 23166 (amending 14 C.F.R.

§ 399.84(a)). As noted above, the agency has construed the word "prominently"

to apply to advertisements that would emphasize the base fare or the amount of

taxes and fees over the actual total price to be paid by consumers. *See* Answers to

Frequently Asked Questions, *supra* n.1, at 22. Nothing in the rule prevents

airlines from displaying these amounts in a manner that can be readily understood

by consumers. Because the rule acts only to prohibit the display of figures that

could confuse the consumer as to the actual price, it acts primarily to prevent

misleading advertisements, which are entitled to no First Amendment protection at

all. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S.

557, 563 (1980); *see also Friedman v. Rogers*, 440 U.S. 1, 16 (1979) (upholding

requirement that commercial speech "appear in such a form as is necessary to

prevent its being deceptive" (internal quotation marks and alterations omitted)).

Even if the limitation on font size is characterized as a restriction on

commercial speech, it is plainly permissible under the *Central Hudson* standard.

Under *Central Hudson*, the government may impose a restriction on commercial

speech so long as it "directly advances" a "substantial" public interest and "is not

more extensive than necessary to serve that interest." *Central Hudson*, 447 U.S. at

566. The government must demonstrate a "'fit' between the legislature's ends and

-40-

the means chosen to accomplish those ends . . . that is not necessarily perfect, but

reasonable;  . . . that employs not necessarily the least restrictive means" but rather

"a means narrowly tailored to achieve the desired objective."  *Bd. of Trs. of State*

*Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989) (citations and internal quotation

marks omitted).  "Within those bounds," the courts "leave it to governmental

decisionmakers to judge what manner of regulation may best be employed."  *Id.*

Here, the airlines cannot dispute that the government has a substantial

interest in ensuring that consumers are accurately informed of the cost of air

travel.  The Department directly advances that interest by adopting a limited policy

of prohibiting advertisements from displaying lesser, included charges with

sufficient prominence that they may make it more difficult to ascertain the overall

cost to the consumer.  And given that the rule expressly authorizes the airlines to

communicate all relevant information, the fit between the restriction and the goals

is more than reasonable.

### 2.     The rule does not affect political speech.

The airlines are wrong to suggest that stating the amounts of base fares and

government taxes constitutes "political speech" subject to more stringent First

Amendment scrutiny.  *See* Spirit/Allegiant Br. 36–37; Southwest Br. 29-31.  As

the airlines must acknowledge, less exacting scrutiny applies to speech that

-41-

"propose[s] a commercial transaction." *Va. Pharm. Bd. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976) (internal quotation marks omitted), *quoted in* Spirit/Allegiant Br. 37. It is difficult to imagine more quintessentially commercial speech than advertisements setting out the price of services to be provided to a consumer.

Southwest can suggest otherwise only by relying on an isolated statement from *Bolger v. Youngs Dairy Products Corp.*, 463 U.S. 60 (1983), while ignoring the case's holding. *See* Southwest Br. 31. *Bolger* concerned "informational pamphlets discussing the desirability and availability of prophylactics." *Id.* at 62. One of the pamphlets, entitled "Plain Talk about Venereal Disease," was "an eight-page pamphlet discussing at length the problem of venereal disease and the use and advantages of condoms in aiding the prevention of venereal disease," and identified a condom manufacturer only on the "last page of the pamphlet, which state[d] that the pamphlet has been contributed as a public service by Youngs, the distributor of Trojan-brand prophylactics." *Id.* at 62 n.4. The Supreme Court concluded that while an economic motivation alone did not render the pamphlets commercial speech, the pamphlets were "commercial speech notwithstanding the fact that they contain discussions of important public issues" because "advertising which 'links a product to a current public debate' is not thereby entitled to the

constitutional protection afforded noncommercial speech." *Id.* at 67-68 (quoting *Central Hudson*, 447 U.S. at 563 n.5). As the Court explained, a "company has the full panoply of protections available to its direct comments on public issues, so there is no reason for providing similar constitutional protection when such statements are made in the context of commercial transactions." *Id.* at 68 (footnote omitted). There can be no serious dispute that the statements at issue here, which merely state the amount of various charges, "are made in the context of commercial transactions."

Although Southwest complains about the "federal tax burden imposed on airline tickets" and asserts that it should "be free to use large and bold font in its airfare advertisements to highlight this tax burden," Southwest Br. 30, it makes no assertion that it has ever actually done so under the regulatory regime that it wishes to reinstate. Rather, the airlines prefer to provide information about taxes in smaller font from the advertised base fare, or even on a separate web page, highlighting that their concern relates to attracting customers for their services rather than any political message.

Spirit and Allegiant's assertion that the full-fare advertising rule "compels the airlines to present themselves as being responsible for the entire advertised price," Spirit/Allegiant Br. 36, vastly overstates the rule's effects. Nothing in the

-43-

rule prohibits the airlines from declaring in their advertisements, in whatever font or format they like, that their price includes taxes and fees, or that they consider those fees to be very high.  Nor does the rule prohibit them from indicating in large or bold font where the breakdown of taxes and fees as opposed to base fare may be found.  If they prefer not to place emphasis in these ways in their advertising because doing so would distract the consumer from the purchase he or she is contemplating, that preference only underscores the weakness of their contention that their advertisement constitutes political rather than commercial speech.

The airlines identify no instance in which any court has treated any remotely comparable speech as "political speech."  The closest they come is *BellSouth Telecommunications, Inc. v. Farris*, 542 F.3d 499, 504-05 (6th Cir. 2008), in which the Sixth Circuit *declined to decide* whether an outright ban on disclosing the existence or amount of a new tax on an invoice constituted a restriction on political speech or commercial speech.  In *BellSouth*, Kentucky enacted a new tax on telecommunications providers and purported to prohibit the providers from "identify[ing] the new tax as a line item on all customer invoices to explain why they have raised prices."  *Id.* at 500.  As the court explained, Kentucky had "done little to justify this ban," and the only potential confusion it identified related to

-44-

whether the tax was imposed on the consumer or on the provider. *Id.* at 506-07.

The court struck the ordinance down under the intermediate scrutiny applicable to

commercial speech. *See id.* at 500. That ruling has no application here, as the

ordinance is targeted at consumer confusion about the price that will ultimately be

paid for air transportation, and airlines are still permitted to disclose the amount of

taxes and fees included in that price. In fact, the invoices that the providers

wished to use in *BellSouth* presumably would have resembled the types of airline

advertisements the full-fare advertising rule expressly authorizes, with the total

amount the consumer owes featured prominently and the breakdown of included

charges in smaller type.

The airlines' other citations are even further afield. In *Riley v. National

Federation of the Blind*, 487 U.S. 781, 796 (1988), the Supreme Court held that a

plea for funds did not alter the fully protected character of other speech with

which the plea was "inextricably intertwined." Nothing in the opinion suggests

that the mere statement of a price or an amount of taxes constitutes fully protected

speech. And as Southwest acknowledges, *Consolidated Edison Co. v. Public

Service Commission of New York*, 447 U.S. 530 (1980), involved "a statement in

support of nuclear energy" included on an invoice. Southwest Br. 31. The

-45-

analogy here would be a statement opposed to taxes on air transportation, to which the rule at issue here would have no application.[11]

## II.    The agency reasonably required that customer-service plans provide for refunds within 24 hours.

The agency also reasonably required that airlines' customer-service plans permit customers to hold a reservation without payment, or to cancel it without penalty, within 24 hours, provided that the reservation is made at least one week before the flight's departure.  The Department's conclusion that the absence of a clear and uniform refund policy was tending to deceive consumers arose in response to concerns expressed in Office of Inspector General reports and elsewhere about airlines' adherence to their customer-service plans.  *See*, *e.g.*, Office of Inspector General, Follow-up Review: Performance of U.S. Airlines in Implementing Selected Provisions of the Airline Customer Service Commitment (Nov. 21, 2006) ("OIG Report")[12]; 72 Fed. Reg. 65233, 65236 (2007) (citing

---

[11] Nor does the rule have any application to foreign airlines who do not market to U.S. consumers.  *But see* IATA Br. 4-5.  Although the agency once in passing imprecisely described the provision as applicable to web sites "accessible in the U.S.," 76 Fed. Reg. at 23143, it elsewhere made clear that no changes to foreign web sites are required "unless those sites market to U.S. consumers," *id.* at 23133.  *See also* Answers to Frequently Asked Questions, *supra* n.1, at 22, 24.

[12] http://www.oig.dot.gov/sites/dot/files/pdfdocs/ACSfinal11-21signed.pdf

-46-

Inspector General's finding of "carrier failings" in the area of adherence to

customer-service plans).

In 1999, the Air Transport Association had signed a "Customer Service

Commitment" on behalf of 14 member airlines.  OIG Report, at 1 & n.2.  In the

Commitment, those airlines agreed to "allow the customer either to hold a

telephone reservation without payment for 24 hours or (at the election of the

carrier) to cancel a reservation without penalty for up to 24 hours."  *Id.* at 40.  By

2006, however, the Office of Inspector General found that only five of the 14

member airlines had "quality assurance and performance measurement systems

and conduct[ed] internal audits to measure compliance with the Commitment and

their customer service plans."  *Id.* at 31.  Moreover, "non-ATA airlines d[id] not

have comprehensive quality assurance and performance measurement systems or

conduct internal audits to measure compliance with their customer service plans."

*Id.*

The agency addressed these concerns in two steps.  First, in December 2009,

the Department issued a final rule requiring U.S. carriers to adopt customer-

service plans that address certain topics.  Final Rule, *Enhancing Airline Passenger*

*Protections*, 74 Fed. Reg. 68983, 69003 (Dec. 30, 2009) (adding 14 C.F.R.

§ 259.5).  An airline's customer-service plan was required to address the airline's

-47-

policy regarding "[a]llowing reservations to be held without payment or cancelled without penalty for a defined amount of time." *Id.* (adding 14 C.F.R. § 259.5(a)(4)). The regulation further required each airline to "audit its own adherence to its plan annually," and to make the audit results available to the Department for review upon request. *Id.* (adding 14 C.F.R. § 259.5(c)).

In the rulemaking at issue here, the agency concluded that further steps were necessary to "ensure that [airline customer-service] plans are specific and enforceable." 75 Fed. Reg. at 32323. The Department's "review of existing customer service plans" revealed that while "some carriers' plans do contain specifics regarding the type of services a consumer can expect," such as "holding reservations without charge for a specific period of time," other "plans are vaguely written making it difficult for a consumer to know how a carrier will address those subjects or whether a carrier has fulfilled its promises." *Id.* For example, Allegiant's customer-service plan "states that customers can cancel their reservation up to 24 hours before the scheduled time of departure, but fails to mention that there are significant fees associated with cancellation or that the remaining funds are returned only as a credit voucher for future travel." Spirit/Allegiant Stay Denial 6 [JA ___].

-48-

The agency thus proposed "establishing minimum standards for the plans," which would "result in consumers being better informed or protected." 75 Fed. Reg. at 32323. The minimum standards were based on a review of existing customer-service plans and a selection of "services already provided by some carriers that appear to be 'best practices.'" *Id.*

In the notice of proposed rulemaking, the agency proposed, consistent with the Air Transport Association's self-imposed Customer Service Commitment, that carriers be required to "allow[] reservations to be held at the quoted fare without payment, or cancelled without penalty, for at least twenty-four hours after the reservation is made." *Id.* After reviewing comments from carriers, however, the agency limited this provision in the final rule, based on concerns that it "could result in loss of sales and revenue by carriers and prevent other passengers from purchasing the seat if the seat is not released in a timely manner prior to the flight." 76 Fed. Reg. at 23129. The final rule thus requires that airlines hold reservations or allow cancellation without penalty for twenty-four hours only "if the reservation is made one week or more prior to a flight's departure." *Id.* at 23165 (amending 14 C.F.R. § 259.5(b)(4)).

The airlines nowhere account for this significant limitation on the final rule. To the contrary, they characterize the regulation even more broadly than the

-49-

proposed rule, as a prohibition on imposing a "cancellation penalty," *see*

Spirit/Allegiant Br. 47-53, or as "prohibiting sales of nonrefundable tickets," *id.* at

51. As the airlines correctly point out, for decades airlines have been permitted to

offer nonrefundable fares, and to impose penalties on customers who purchase

nonrefundable fares and then seek to change or cancel their reservations. *See, e.g.*,

*Pet'n of Joel Kaufman re Ticket Change Penalties*, DOT Order 2003-3-11, at 2

(Mar. 18, 2003). Nothing in the 24-hour refund rule changes this policy—after 24

hours, fares may be nonrefundable.

Spirit and Allegiant's assertion that "prohibiting sales of nonrefundable

tickets will increase prices" is therefore beside the point. Spirit/Allegiant Br. 51.

The rule does not effectuate such a substantial change in airline pricing practices,

which, as the airlines note, the agency would not undertake absent "compelling

evidence of consumer deception." *Pet'n of Kaufman*, Order 2003-3-11, at 2.

Instead, the rule merely requires a modest change in refund practices to ensure that

customers are not deceived by ill-disclosed refund policies. As the agency noted,

many airlines already provide refunds on precisely the terms contemplated by the

rule, and Spirit itself already allows travel agents to reserve seats (though not

fares) for 24 hours, and will provide a "courtesy refund" within 24 hours of

purchase in certain circumstances. 76 Fed. Reg. at 23126. Requiring them to

-50-

apply this policy to additional customers was a reasonable response to the documented problems with adherence to customer-service plans.

## III.  The post-purchase price increase rule is reasonable and has limited practical effect.

The post-purchase price increase rule makes it an unfair or deceptive practice for any seller of air transportation to collect a consumer's money and then unilaterally raise the price of a ticket purchased or related items like baggage fees. *See* 76 Fed. Reg. at 23167 (adding 14 C.F.R. § 399.88(a)).  Neither petitioner alleges that it has any plan to unilaterally raise the price of tickets after collecting the consumer's money—nor can they plausibly contest the agency's conclusion that such a practice would be unfair or deceptive—so their only challenge is to the rule's application to other items.

In addition, the Department has recently determined that, because of a relative lack of focus on ancillary charges other than baggage charges during the rulemaking at issue here, the agency will undertake a new notice-and-comment procedure before enforcing the post-purchase price increase provision to any ancillary service other than the carriage of carry-on baggage and the first and second checked bag.  *See* Guidance on Price Increases of Ancillary Services and Products Not Purchased with the Ticket, *supra* n.2.  Thus, the only issue that

-51-

remains appropriate for this Court's review is whether the agency permissibly protected consumers from airlines who sold them tickets while stating that baggage charges would be one amount, only to charge them a larger amount when they arrived at the airport and sought to check their baggage.  The airlines raise two challenges to this rule, neither meritorious.

First, the airlines argue that the final rule so deviated from the proposed rule that they had inadequate notice of the rule's potential scope.  The proposed rule deemed it an unfair and deceptive practice for a "seller of scheduled air transportation . . . to increase the price of that air transportation to a consumer, *including but not limited to* increase in the price of the seat, *increase in the price for the carriage of passenger baggage,* or increase in an applicable fuel surcharge, after the air transportation has been purchased by the consumer."  75 Fed. Reg. at 32341 (emphasis added).  The final rule adopted exactly the same language, but added at the end the phrase "except in the case of an increase in a government-imposed tax or fee," and specified that a "purchase is deemed to have occurred when the full amount agreed upon has been paid by the consumer."  76 Fed. Reg. at 23167.  It is difficult to see how the final rule would not be described as a "logical outgrowth" of the proposal.  *See Nat'l Mining Ass'n v. Mine Safety and Health Admin.*, 512 F.3d 696, 699 (D.C. Cir. 2008).

-52-

The airlines complain that they were unaware that the rule would apply to baggage charges that are paid after the ticket purchase. As noted above, the proposed rule itself made clear that the agency was considering the circumstances under which airlines could increase baggage charges. Other documents available at the time of the proposed rule reinforced the point. In a 2008 guidance, the Department had already stated that airlines committed an unfair and deceptive practice if they applied "more restrictive baggage policies or additional charges . . . retroactively to a consumer who purchased his or her ticket at a time when the charges did not apply, or when a lower charge applied." DOT, Guidance on Disclosure of Policies And Charges Associated with Checked Baggage, 73 Fed. Reg. 28854, 28854 (2008). The agency cited this guidance in the preliminary regulatory analysis for this rule, made available at the time of the notice of proposed rulemaking. Preliminary Regulatory Analysis, at 18 [JA ___].

Recognizing that the question of when baggage charges could be increased was squarely presented by the rulemaking, the Air Transport Association asked the Department during the comment period to "clarify that the carrier may charge consumers to check bags post-purchase but before departure, *provided that the fee was in effect on the purchase date*." ATA Comments 19 [JA ___] (emphasis added). The "principal trade and service organization of the U.S. scheduled-

airline industry," ATA Br. xi, thus anticipated, and supported, exactly the rule that is currently in effect. *See* ATA Comments 19 [JA ____].[13]

The airlines fare no better in suggesting that the post-purchase price increase restriction is arbitrary and capricious. The airlines have not challenged the agency's determination that each carrier must "prominently disclose on its website information on fees for all optional services that are available to a passenger purchasing air transportation." 76 Fed. Reg. at 23167 (adding 14 U.S.C. § 399.85(d)). This listing was designed to allow consumers to "determine the total cost for travel, including ancillary fees for optional services." *Id.* at 23148. There is nothing arbitrary and capricious about concluding that it is unfair to entice a consumer with a promise of a low baggage fee only to raise that fee unilaterally once the consumer has purchased a ticket. Given that consumers are frequently locked into their travel plans, often by nonrefundable tickets and otherwise by increasing fares since the date of purchase, and locked into their need to bring baggage with them, there is no merit to the suggestion that it suffices to "make[] clear to the consumer before he buys his ticket that charges for optional services may go up." Spirit/Allegiant Br. 59.

---

[13] Accordingly, the ATA's objections in its brief in this Court, which address amenities other than baggage, *see* ATA Br. 23, are inapplicable to the rule as the agency intends to enforce it.

## CONCLUSION

For the foregoing reasons, the petitions for review should be denied.

Respectfully submitted,

Of Counsel:

ROBERT S. RIVKIN
  General Counsel

PAUL M. GEIER
  Assistant General Counsel
    for Litigation

TIMOTHY H. GOODMAN
  Senior Trial Attorney

SAMUEL PODBERESKY
  Assistant General Counsel for
    Aviation Enforcement and
    Proceedings

BLANE WORKIE
  Deputy Assistant General Counsel
    for Aviation Enforcement and
    Proceedings
  U.S. Department of Transportation

DECEMBER 2011

TONY WEST
  Assistant Attorney General

MICHAEL S. RAAB
  (202) 514-4053
DANIEL TENNY      /s/
  (202) 514-1838
  Attorneys, Appellate Staff
  Civil Division, Room 7215
  Department of Justice
  950 Pennsylvania Avenue, NW
  Washington, D.C. 20530

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(7)

I hereby certify that this brief complies with the type-volume limitation set

forth in Fed. R. App. P. 32(a)(7)(B).  This brief contains 11,740 words.


s/ Daniel Tenny
Daniel Tenny

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2011, I filed the foregoing brief using the Court's CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the Appellate CM/ECF system.


s/ Daniel Tenny
Daniel Tenny

**ADDENDUM – AIRLINE WEB SITES**

# Flight availability

Fares listed are per person, **non-refundable** and do not include all **taxes and fees**. Additional fees such as **baggage fees**, **change fees** and **advance seat assignment fees** may apply.

## Departing Flight

Choose any date in the calendar on the right and view the information for that day below.

**JANUARY 2012**

| SUN | MON | TUE | WED | THU | FRI | SAT |
|---|---|---|---|---|---|---|
| 1 $64 | 2 $64 | 3 $64 | 4 $44 | 5 $44 | 6 $44 | 7 $29 |
| 8 $29 | 9 $29 | 10 $29 | 11 $14 | 12 $14 | 13 $14 | 14 $14 |
| 15 $14 | 16 $14 | 17 $14 | 18 $14 | 19 $14 | 20 $29 | 21 $14 |
| 22 $14 | 23 $14 | 24 $14 | 25 $14 | 26 $14 | 27 $29 | 28 $14 |
| 29 $14 | 30 $14 | 31 $14 | 1 | 2 | 3 | 4 |

☐ Selected date       ☐ Cheapest fare

☐ $9 Fare Club       ☐ Standard fare

Los Angeles, CA to Las Vegas, NV (LAX to LAS)
Monday, January 30

| Depart ▼ | Arrive | Stops | Flight(s) | Type | Price | + | Fuel ? | = | Fare |
|---|---|---|---|---|---|---|---|---|---|
| 10:05 AM | 11:10 AM | **Nonstop** | 470 | Standard | $14 00 | | $0 00 | | ⚪ $14 00 |
| 1:45 PM | 2:50 PM | **Nonstop** | 360 | Standard | $14 00 | | $0 00 | | ⚪ $14 00 |
| 8:00 PM | 9:05 PM | **Nonstop** | 918 | Standard | $14 00 | | $0 00 | | ⚪ $14 00 |

Total departure airfare per customer including all **taxes and fees**: $41.69 - $41.69

## Your Itinerary

Please select your **Departing Flight** above.

[ Book ]

Lower fares generally available at the airport.

USCA Case #11-1219          Document #1350227          Filed: 12/29/2011          Page 71 of 73

Welcome! | Sign In | Need Help?

 Like

Home     Book Vacation     Hotels     Cruises     Destinations     Activities     Travel Tools     Check-In     My Allegiant®

**YOUR VACATION PACKAGE SEARCH**
01/05/2012 (Oneway) (Accepting reservations through 08/14/2012)

search   select   travelers   reserve   confirm

**CHOOSE DEPARTURE DATE BELOW**

| From | To |
|------|-----|
| BELLINGHAM, WA ▼ | LAS VEGAS, NV ▼ |

**Promo Code**
[ Promo Code ]   ☑ One Way

**Adults (14+)**  **Children (0-13)**
1 ▼                 0 ▼

### JANUARY 2012

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
| 1 $46.99 | 2 $77.99 | 3 | 4 $77.99 | 5 $30.99 | 6 $46.99 | 7 $61.99 |
| 8 $30.99 | 9 $61.99 | 10 | 11 $61.99 | 12 $46.99 | 13 $61.99 | 14 $61.99 |
| 15 $46.99 | 16 $46.99 | 17 | 18 $77.99 | 19 $61.99 | 20 $61.99 | 21 $61.99 |
| 22 $46.99 | 23 $46.99 | 24 | 25 $94.99 | 26 $61.99 | 27 $61.99 | 28 $46.99 |
| 29 $46.99 | 30 $61.99 | 31 | 1 | 2 | 3 | 4 |

Allegiant will no longer accept unaccompanied minors under the age of 14.
Note: You must be at least 21 years of age to make a hotel or car reservation.

Prices listed are for one (1) seat only.
You will see the **next lowest flight price** after clicking "Continue" if inventory cannot accommodate your request.

Total departure airfare per passenger
including all Taxes and Fees = $51.69 to $115.69

■ Available   ■ Selected   ■ Unavailable   ■ Best Value

**CHOOSE RETURN DATE BELOW**

Return flight not applicable



SAVE A BUNDLE
WHEN YOU BUNDLE:

Get $20* off your airfare
when you book your flight
and hotel together.

[ Continue ]

All fares in US dollars.
Fares shown are the lowest available and may fluctuate until purchased and confirmed. The lowest fare available on your selected date will be displayed and will include any advertised discount available for booking online. Base prices do not include PFC, segment fees or September 11th security fee of up to $10.70 per segment. A segment is one take-off and one landing. A convenience fee of $10.00 per passenger, per segment will apply when booked on allegiantair.com. A convenience fee of $10.00 per passenger, per segment, plus $14.99 per segment, will apply when purchased through Allegiant Air call center. Purchases made at any Allegiant Air Airport Ticket Office will not incur a convenience or call center fee. When purchased at time of booking, a checked bag fee of up to $29.99 per bag, per segment will apply for the first two(2) checked bags. If purchased at flight check-in, a fee of $35 per checked bag, per person, per segment will apply for the first two bags checked. In all cases additional higher fees will apply for three or more checked bags. Fare rules, routes and schedules are subject to change without notice. Fares are non-refundable. No credit or refund will be given for fare differences or fluctuations after reservation is purchased. Seats are limited and subject to availability. Restrictions apply. Any credits for future travel resulting from changes or cancellations of this reservation can be used for online/web reservations and therefore can be applied to any web-only fares or web discounts. Any changes to travel date may result in a higher price in addition to change fee(s). Customers with credits may call Allegiant Air Reservations to make their reservation and will be charged the lowest available non-web fare plus any applicable fees.
*$20 Off Package offer is based on a minimum two (2) night, air+hotel purchase and is valid only at select Allegiant-preferred hotels in select cities. Two-night hotel stay must be consecutive and on same itinerary. Offer not available on all dates and not valid on previous reservations. Offer not available at airport ticket counters and on travel agency bookings. Not valid with Fly Nearly Free offers. Maximum of four (4) passengers per booking (itinerary) are eligible for the offer. Allegiant reserves the right to adjust the discount amount, the number of passengers eligible for discount or cease the offer at any time. Hotel night free offer is based on a minimum three (3) nights, air+hotel purchase and is valid only at select Allegiant preferred hotels in select cities. Only one night free per hotel reservation. Three nights of hotel stay must be consecutive and on same itinerary. Offer not available on all dates and not valid on previous reservations. Free night credited is based upon the lowest priced hotel night during stay.
Click Here for our Baggage Policy.

If you have any questions regarding this web booking, please contact ALLEGIANT at 702-505-8888.

| **TRAVEL WITH US** | **COMPANY** | **TRAVEL TOOLS** | **HELP** | **FOLLOW US** |
|---|---|---|---|---|
| Book Vacation | About Allegiant | Online Check-In | Contact Us | |
| Hotel Partners | Newsroom | My Allegiant™ | FAQ | |
| Activities | Careers | Route Map | Sitemap | |
| Charters | Investors | Flight Status | Travel Agents | |
| Travel Vouchers | Contract of Carriage | | Fees for Our Services | |
| Home | Privacy Policy | | | |

© 2011 Allegiant Travel Company™. All Rights Reserved.

**STATUTORY ADDENDUM**

**49 U.S.C. § 41712. Unfair and deceptive practices and unfair methods of competition**

(a) In general.--On the initiative of the Secretary of Transportation or the complaint of an air carrier, foreign air carrier, or ticket agent, and if the Secretary considers it is in the public interest, the Secretary may investigate and decide whether an air carrier, foreign air carrier, or ticket agent has been or is engaged in an unfair or deceptive practice or an unfair method of competition in air transportation or the sale of air transportation. If the Secretary, after notice and an opportunity for a hearing, finds that an air carrier, foreign air carrier, or ticket agent is engaged in an unfair or deceptive practice or unfair method of competition, the Secretary shall order the air carrier, foreign air carrier, or ticket agent to stop the practice or method.

(b) E-ticket expiration notice.--It shall be an unfair or deceptive practice under subsection (a) for any air carrier, foreign air carrier, or ticket agent utilizing electronically transmitted tickets for air transportation to fail to notify the purchaser of such a ticket of its expiration date, if any.

(c) Disclosure requirement for sellers of tickets for flights.--
     (1) In general.--It shall be an unfair or deceptive practice under subsection (a) for any ticket agent, air carrier, foreign air carrier, or other person offering to sell tickets for air transportation on a flight of an air carrier to fail to disclose, whether verbally in oral communication or in writing in written or electronic communication, prior to the purchase of a ticket--

          (A) the name of the air carrier providing the air transportation; and

          (B) if the flight has more than one flight segment, the name of each air carrier providing the air transportation for each such flight segment.

     (2) Internet offers.--In the case of an offer to sell tickets described in paragraph (1) on an Internet Web site, disclosure of the information required by paragraph (1) shall be provided on the first display of the Web site following a search of a requested itinerary in a format that is easily visible to a viewer.